IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| LAURA PEREZ-GARCIA,<br><br>　　　　　　Plaintiff,<br><br>　　v.<br><br>LARRY DOMINICK, *et al.*,<br><br>　　　　　　Defendants. | Case No. 13 C 1357<br><br>Hon. Harry D. Leinenweber |

**MEMORANDUM OPINION AND ORDER**

Three Motions to Dismiss are pending before the Court: the motion of Defendants Tony Martinucci, Mark Kraft, Jose Rodriguez, Brian Dominick, Alex Rueda, Frank Szchech, and Mark Nowak (the "Martinucci Defendants") [ECF No. 23]; the Motion of Defendant Clyde Park District (the "District") [ECF No. 29]; and the Motion of Defendant Larry Dominick ("Dominick") (ECF No. 20). For the reasons stated herein, the Martinucci Defendants' and the District's Motions each are granted in part and denied in part. Dominick's Motion is granted in its entirety.

**I.　BACKGROUND**

Plaintiff Laura Perez-Garcia ("Perez-Garcia") served as a Clyde Park District employee from 1998 to 2012. In 2000, she was assigned to the position of Administrative Assistant to the District's Executive Director. Her duties included managing credit

card receipts, paying the District's credit card bills, calculating payroll, and preparing check requests.

In 2005, Anthony Martinucci ("Martinucci") was hired to replace the District's then-serving Executive Director. Around this time, Perez-Garcia began to notice that Martinucci and the District's Recreation Director, Mark Kraft ("Kraft"), were violating District policies by failing to submit receipts for charges they had made to the District's credit card account. Perez-Garcia was troubled by this because it appeared that Martinucci and Kraft were using the District's credit card for personal expenses. In addition, Perez-Garcia noticed that Kraft and one of his employees frequently submitted informal check requests without providing information as to how the funds they were drawing from the District's account were being used.

Perez-Garcia reported this conduct by sending internal memoranda to all District department heads, including Martinucci and Kraft, reminding them of the District's receipt policy. Despite her efforts, Martinucci and Kraft continued to violate District policy.

Sometime between 2007 and 2008, Perez-Garcia reported these ongoing violations to Jose Rodriguez ("Rodriguez"), the President of the District's Board of Commissioners. Although Rodriguez acknowledged Perez-Garcia's complaint and assured her that he would look into the matter, he took no action.

In April 2012, Martinucci expressed concern to Perez-Garcia about there being a "leak" in the department and directed her not to allow anyone into her office outside her presence. Around this time, a meeting was convened between Perez-Garcia, Martinucci, Kraft, and certain municipal officials to discuss tensions within the District that had arisen as a result of Martinucci's and Kraft's failure to provide credit card receipts. Following that meeting, Perez-Garcia's job responsibilities were curtailed without explanation.

Throughout the summer, Perez-Garcia continued to document and report credit card and check payment violations she witnessed. She also reported these concerns to the District's outside legal counsel.

In September 2012, Perez-Garcia was placed on indefinite administrative leave after her daughter was accused of damaging a wire to a security camera in her office. Thereafter, Perez-Garcia received a letter informing her that she was being terminated "for cause." The letter did not, however, state the reason for her termination.

On February 20, 2013, Perez-Garcia filed a four-count Complaint in this Court, seeking relief against the District and a number of its officers and employees for alleged violations of federal and state law arising out of her termination. The District, the Martinucci Defendants, and Dominick each have moved

to dismiss for failure to state a claim upon which relief can be granted.

## II. LEGAL STANDARD

A motion to dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure challenges the legal sufficiency of a complaint. *Hallinan v. Fraternal Order of Chi. Lodge No. 7,* 570 F.3d 811, 820 (7th Cir. 2009). A complaint must provide a short and plain statement of the claim showing that the plaintiff is entitled to relief. FED. R. CIV. P. 8(a)(2). To survive a motion to dismiss, a complaint must contain sufficient factual allegations that, when accepted as true, state a claim that is plausible on its face. *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009). The Court accepts all well-pleaded facts and draws any reasonable inferences from those facts in favor of the plaintiff. *Justice v. Town of Cicero,* 577 F.3d 768, 771 (7th Cir. 2009).

## III. DISCUSSION

### A. The District's and the Martinucci Defendants' Motions to Dismiss

#### 1. Count I

Count I of Perez-Garcia's complaint alleges a "class of one" equal protection claim pursuant to 42 U.S.C. § 1983. The District and the Martinucci Defendants move to dismiss Count I on grounds that the Supreme Court's ruling in *Enquist v. Oregon Dep't of Agriculture,* 553 U.S. 591 (2008), bars public employees from

bringing such claims. Perez-Garcia concedes that it does and raises no objection to the dismissal of Count I. (Pl.'s Mem. in Opp. to Def.s' Motions to Dismiss ("Pl.'s Opp. Mem.") at 5, ECF No. 43). Accordingly, Count I of the Complaint is dismissed.

### *2. Count II*

In Count II, Perez-Garcia alleges that the Defendants violated her First Amendment rights by retaliating against her after she reported her supervisors for violating District policies. To assert a valid First Amendment retaliation claim, a public employee must allege that "(1) [her] speech was constitutionally protected, (2) [she] suffered a deprivation likely to deter speech, and (3) [her] speech was at least a motivating factor in the employer's action." *Swetlik v. Crawford,* 738 F.3d 818, 825 (7th Cir. 2013). The District and the Martinucci Defendants seek to dismiss Count II on grounds that Perez-Garcia's speech was not entitled to First Amendment protection because her complaints about policy violations were made "in the context of" her employment duties.

In *Garcetti v. Ceballos*, the Supreme Court held that "when public employees make statements pursuant to their official duties, [they] are not speaking as citizens for First Amendment purposes, and the Constitution does not insulate their communications from employer discipline." *Garcetti v. Ceballos,* 547 U.S. 410, 421 (2006). *Garcetti* involved a deputy district attorney who alleged that he was retaliated against after submitting a memorandum to his

supervisors expressing concern about serious inaccuracies in an affidavit that had been used to obtain a critical search warrant. *Id.* The Court concluded that the plaintiff's statements in the memorandum were not protected under the First Amendment because preparing documents that provided advice to supervisors was part of his employment duties as a prosecutor. *Id.*

*Garcetti* distinguished between speech as a private citizen, which is protected by the First Amendment, and speech "ow[ing] its existence to a public employee's professional responsibilities," which is not. *Garcetti,* 547 U.S. at 421. The District and the Martinucci Defendants contend that, as in *Garcetti,* Perez-Garcia's internal complaints do not qualify as protected speech because reporting policy violations was an aspect of her job responsibilities. The Defendants' assumption in that regard, however, is dubious in light of the Complaint's description of Perez-Garcia's duties as an administrative assistant.

According to the Complaint, Perez-Garcia's duties consisted of basic secretarial tasks, such as managing credit card receipts, paying bills, and preparing check requests. Considering the clerical nature of this work and the low-ranking position she occupied within the District's organizational structure, it seems unlikely that uncovering and chronicling the misconduct of her supervisors would have been among her responsibilities. Indeed, it is difficult to imagine that someone in Perez-Garcia's position

would have been expected to report Martinucci – the District's *Executive Director* – to the President of the Board of Commissioners or to the District's outside legal counsel.

Although the Defendants may be correct that the alleged policy violations were associated with Perez-Garcia's credit card and check request duties, "the question under *Garcetti* is whether the plaintiff[] spoke *pursuant* to [her] official duties, not whether [her] speech was somehow *related* to [those] duties." *Diadenko v. Folino,* 890 F.Supp.2d 975, 988 (N.D. Ill. 2012). At this stage, it suffices that the Complaint does not make clear whether or not Perez-Garcia's reporting of policy violations "owed its existence" to her responsibilities as an administrative assistant. *See, Garcetti,* 547 U.S. at 421. At the very least, further factual development will be required to dispense with the issue. Dismissal at this juncture therefore would be improper.

The Martinucci Defendants also contend (the District apparently does not join in this argument) that Perez-Garcia's speech was unprotected because she made her reports internally and did not voice her concerns to any member of the public at large. The Martinucci Defendants cite *Valentino v. Village of Chicago Heights,* 575 F.3d 664, 672 (7th Cir. 2009), as support for this proposition, but the reference is puzzling because *Valentino* did not hold that an employee's speech need be directed toward a member of the public in order to be protected. Indeed, many cases have

found an employee's speech to be protected under the First Amendment even though the speech was made internally. *See, e.g., Kirstofek v. Village of Orland Hills,* 712 F.3d 979 (7th Cir. 2013) (police officer's reporting of political corruption to his fellow officers, supervisors, and the FBI was protected).

Thus, the proper inquiry is not whether the employee directed her speech toward the public, but whether the speech reflects a matter of *public concern*. *See, Chaklos v. Stevens,* 560 F.3d 705, 712-13 (7th Cir. 2009). Since the misuse of public funds is unquestionably a matter of public concern, *Valentino,* 575 F.3d at 672, Perez-Garcia has alleged speech that is entitled to First Amendment protection.

Consequently, the District's and Martinucci Defendants' Motions to dismiss Count II are denied.

### *3. Count III*

In Count III, Perez-Garcia alleges that she was terminated without due process of law in violation of the Fourteenth Amendment. To support such a claim, Perez-Garcia must demonstrate that she had a constitutionally protected property interest in her employment with the District and that she was deprived of that interest without due process of law. *See, Krieg v. Seybold,* 481 F.3d 512, 518 (7th Cir. 2007). "Due process claims in the context of public employment require an entitlement to continued employment." *Palka v. Shelton,* 623 F.3d 447, 452 (7th Cir. 2010).

The District and the Martinucci Defendants argue that Perez-Garcia's Complaint fails to allege any such entitlement and that Count III therefore must be dismissed.

A plaintiff may show that she is entitled to continued employment in one of two ways: (1) "by an independent source such as state law securing certain benefits," or (2) "by a clearly implied promise of continued employment." *Palka,* 623 F.3d at 452. Perez-Garcia does not allege that she had an express contractual agreement with the District or that any state law or municipal regulation conferred upon her a right to continued employment. Rather, she contends that her "flawless" record over the course of a fourteen year career with the District created an implied contract that entitled her to continued employment. As support for that assertion, Perez-Garcia points to two allegations in her Complaint: (1) that she never had been disciplined prior to the events leading up to her termination, and (2) that Martinucci once reassured her that she had done nothing wrong following an incident in which a maintenance worker happened upon her in Martinucci's locked office. Neither is even remotely sufficient to give rise to a clearly implied promise of continued employment.

In *Phelan v. City of Chicago,* the Seventh Circuit noted that factors such as "longevity of service, good performance reviews, and periodic salary increases are insufficient to show a property interest in continued employment." *Phelan v. City of Chicago,* 347

F.3d 679, 682 (7th Cir. 2003). Therefore, although Perez-Garcia may have been under the impression that her lengthy work history and exemplary record entitled her to continued employment with the District, her allegations in that regard fail to support the conclusion that she was anything other than an at-will employee subject to termination at any time. Perez-Garcia's Complaint thus falls far short of demonstrating that she was entitled to any constitutionally protected property interest in her employment at the District.

Accordingly, Count III of the Complaint is dismissed.

### *4. Count IV*

In Count IV, Perez-Garcia alleges that the Defendants retaliated against her in violation of the Illinois False Claims Act, 740 Ill. Comp. Stat. 175/1, *et seq.* ("IFCA"). IFCA claims are evaluated under standards identical to those applied in cases arising under its federal analog, the False Claims Act, 31 U.S.C. §§ 3729-3733 ("FCA"). *United States ex rel. Upton v. Family Health Network, Inc.,* 900 F.Supp.2d 821, 828 (N.D. Ill. 2012). Because the IFCA is an anti-fraud statute, "claims under it are subject to the heightened pleading requirements of Rule 9(b) of the Federal Rules of Civil Procedure." *United States ex rel. Gross v. AIDS Research Alliance-Chicago,* 415 F.3d 601, 604 (7th Cir. 2005).

*a. Martinucci Defendants*

The Martinucci Defendants seek to dismiss Count IV on grounds that Perez-Garcia's IFCA claims against them in their individual or official capacities both are improper. To the extent that Perez-Garcia sues the Martinucci Defendants in their official capacities, the Court agrees that these claims must be dismissed, since they are duplicative of the claims she asserts against the District. *See, Kentucky v. Graham,* 473 U.S. 159, 165-66 (1985).

As for her individual capacity claims, the Martinucci Defendants contend that the IFCA does not impose liability on individual defendants. In support of that contention, the Martinucci Defendants appear to rely on a prior version of 740 Ill. Comp. Stat. 175/4(g), which afforded plaintiffs a civil remedy for retaliatory actions on the part of their "employer." That version of the statute stated in relevant part:

> Any employee who is discharged, demoted, suspended, threatened, harassed, or in any other manner discriminated against in the terms and conditions of employment by his or her employer because of lawful acts done by the employee . . . shall be entitled to all relief necessary to make the employee whole.

In *Pollak v. Bd. of Trs. of the Univ. of Ill.,* this Court interpreted the FCA's identical anti-retaliation provision and concluded that supervisors, like the Martinucci Defendants, could not be sued in their individual capacities because they "[did] not qualify as 'employers' subject to liability under the FCA." *Pollak*

*v. Bd. of Trs. of the Univ. of Ill.,* No. 99 C 710, 2004 WL 1470028, at *3 (N.D. Ill. June 30, 2004) (citing, *inter alia*, *United States ex rel. Golden v. Arkansas Game & Fish Comm'n,* 333 F.3d 867, 871 (8th Cir. 2003), cert. denied, 540 U.S. 1108 (2004), and *United States ex. rel. Siewick v. Jamieson Science and Engineering, Inc.,* 322 F.3d 738, 740 (D.C. Cir. 2003)). Although *Pollak* was decided in the context of a federal FCA claim, the result would have been no different had the plaintiff sued under the IFCA, since the IFCA's and FCA's anti-retaliation provisions contained the same language.

In 2009, *Pollack* and the cases upon which it relied were rendered obsolete when Congress amended the FCA's anti-retaliation provision to remove the section's previous reference to the term "employer." Subsequently, relevant portions of the IFCA were amended similarly. *See,* Ill. Pub. Act 96-1304, § 10. The IFCA's anti-retaliation provision in its current form, which tracks the updated language of the federal FCA, now reads as follows:

> any employee, contractor, or agent shall be entitled to all relief necessary to make that employee, contractor, or agent whole, if that employee, contractor, or agent is discharged, demoted, suspended, threatened, harassed, or in any other manner discriminated against in the terms and conditions of employment because of lawful acts done by the employee, contractor, or associated others in furtherance of an action under this Section or other efforts to stop one or more violations of this Act.

740 Ill. Comp. Stat. 175/4(g).

Some courts have suggested that the elimination of the word "employer" from the federal FCA opened the door to individual liability in retaliation claims by "le[aving] the universe of [potential] defendants undefined and wide-open." *Weihua Huang v. Rector and Visitors of Univ. of Va.,* 896 F.Supp.2d 524, 548 n.16 (W.D. Va. 2012); *see also, Laborde v. Rivera-Dueno,* 719 F.Supp.2d 198, 205 (D.P.R. 2010). Many other district courts have concluded otherwise. *See, Lipka v. Advantage Health Grp., Inc.,* No. 13-CV-2223, 2013 WL 5304013, at *11-12 (D. Kan. Sept. 20, 2013); *Russo v. Broncor, Inc.,* No. 13-cv-348-JPG-DGW, 2013 WL 7158040, at *6 (S.D. Ill. July 24, 2013); *Aryai v. Forfeiture Support Assocs., LLC*, No. 10 Civ. 8952 (LAP), 2012 U.S. Dist. LEXIS 125227 (S.D.N.Y. Aug. 27, 2012); *United States ex rel. Abou-Houssein v. Science Applications Intern. Corp.,* No. 2:09-1858-RMG, 2012 WL 6892716, at *3 (D.S.C. May 3, 2012). Although the issue remains an open question in this and other circuits, the Court agrees with the latter cases and holds that the amended FCA – and, by implication, the IFCA – provides no right of action against Defendants in their individual capacities.

In this regard, the Court finds the well-reasoned decision in *Aryai v. Forfeiture Support Assocs., LLC,* 2012 U.S. Dist. LEXIS 125227, *19-27 to be instructive. In *Aryai,* the court conducted a thorough and scholarly statutory analysis and determined that removal of the reference to the word "employer" from the FCA's

anti-retaliation provision did not reflect a legislative intent to impose liability on defendants in their individual capacities. Rather, the court explained, Congress' stated purpose in amending the FCA was to expand the class of plaintiffs protected under the Act so as to include contractors and agents (both ordinarily are not considered "employees" and, thus, were not covered by the Act in its previous version). *Id.* at 23 (citing H.R. Rep. No. 111-97, at 14 (2009)); *see also, Abou-Hussein,* 2012 WL 6892716, at *3 (noting Congress' intent to undo a number of appellate court decisions construing the word "employee" narrowly). Noting that the Congressional Record contained "no similar statement of intent to expand the scope of liability to include individuals," the court found it significant that Congress had been aware that courts "uniformly rejected individual liability" in FCA retaliation suits, but had expressed no intent to overrule this line of authority. *Aryai,* 2012 U.S. Dist. LEXIS 125227, at *23. In any event, the court concluded, it was more likely that the word "employer" had been deleted from the statute "not to provide for individual liability but to avoid confusion in cases involving a 'contractor or agent' rather than an 'employee.'" *Id.* at 25; *accord Russo,* 2013 WL 7158040, at *6 ("[T]he more likely reason for omitting 'employer' from the statute is to avoid confusion when an action is brought by a contractor or agent, the newly-added classes to be

protected under the statute. Retaliation against these two classes would not be by an 'employer.'").

The Court finds that *Aryai*'s holding can be applied with equal force to the IFCA's updated anti-retaliation provision, since its language is identical to that of the federal FCA. In the absence of any indication that, despite this shared language, the IFCA was intended to impose additional liability beyond that which was contemplated by the FCA, the Court concludes that the IFCA does not allow for a right of action against defendants in their individual capacities. Therefore, to the extent that Perez-Garcia sues the Martinucci Defendants in their individual capacities, her claims are barred.

For these reasons, Perez-Garcia's IFCA retaliation claims against the Martinucci Defendants are dismissed.

### b. The District

To succeed on her IFCA claim against the District, Perez-Garcia must allege that (1) her actions were taken in furtherance of an IFCA enforcement action and were therefore protected by the statute, (2) the District had knowledge that she was engaged in this protected conduct, and (3) her discharge was motivated, at least in part, by the protected conduct. *See, Fanslow v. Chicago Mfg. Ctr., Inc.,* 384 F.3d 469, 479 (7th Cir. 2004). The District contends that Perez-Garcia's allegations are insufficient to support her claim that she engaged in activity protected the IFCA.

To that end, the District argues that Perez-Garcia's conduct was unprotected because she made her complaints internally and was more concerned about securing compliance with District policies than reporting fraud.

Whether an employee brings her complaints internally may be relevant in some circumstances to show that her activities were unprotected, *see, Brandon v. Anesthesia & Pain Mgmt. Assocs., Ltd.,* 277 F.3d 936, 944 (7th Cir. 2002), but this factor is by no means dispositive. Rather, the Seventh Circuit has made clear that the proper inquiry "to determine whether an employee's actions are protected under [the IFCA] is whether: (1) the employee in good faith believes, and (2) a reasonable employee in the same or similar circumstances might believe, that the employer is committing fraud against the government." *Fanslow,* 384 F.3d at 480 (quotation marks omitted).

Based upon the facts Perez-Garcia has alleged here, it is plausible that she believed sincerely and reasonably that Martinucci and Kraft were misusing government funds and flouting District policy deliberately in order to hide their misconduct. While it is true that Perez-Garcia did not engage in any sort of personal investigation or collect evidence in anticipation of bringing a future IFCA action, an employee "need not have actual knowledge of the [IFCA] for her actions to be considered 'protected activity.'" *Id.* at 479. At this stage, it is sufficient that her

allegations demonstrate her good faith and reasonable belief that the defendants were engaged in fraudulent activity. *See, id.* at 480.

The District also contends that Perez-Garcia fails to state a claim because her actions did not confer appropriate notice that she was engaged in activity protected under the IFCA. In that regard, the District relies extensively on *Brandon,* which held that when an employee's duties include reporting internal fraud, the making of internal reports concerning illegal activity may be insufficient to place an employer on notice that the employee is engaging in protected activity. *Brandon,* 277 F.3d at 945. As noted previously, however, the allegations in Perez-Garcia's Complaint do not support an inference that reporting fraud was at all within the scope of her regular job duties. In these circumstances, there is nothing to suggest that Perez-Garcia's internal complaints would have been insufficient to place the District on notice that she was engaged in activity protected under the IFCA.

The District's Motion to Dismiss Count IV therefore is denied.

### B. Dominick's Motion to Dismiss

Perez-Garcia does not oppose Dominick's Motion to Dismiss, but rather seeks leave to file an Amended Complaint adding further allegations concerning Dominick. (Pl.'s Resp. at 14). Therefore, Dominick's Motion is granted on all counts without prejudice.

Perez-Garcia shall file her Amended Complaint within twenty-eight (28) days of the date of this order.

### IV. CONCLUSION

For the reasons stated herein, the Court rules as follows:

1. On Count I, the Court grants dismissal in favor of the Martinucci Defendants and the District;

2. On Count II, the Court denies the Martinucci Defendants' and the District's Motions to Dismiss;

3. On Count III, the Court grants dismissal in favor of the Martinucci Defendants and the District;

4. On Count IV, the Court grants dismissal as to the Martinucci Defendants, but denies the District's Motion to Dismiss;

5. The Court grants Dominick's Motion to Dismiss on all counts; and

6. The Plaintiff shall file her Amended Complaint with respect to Dominick within twenty-eight (28) days of the date of this Order.

**IT IS SO ORDERED.**

_____
Harry D. Leinenweber, Judge
United States District Court

Date: 3/7/2014