## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

| | | |
|---|---|---|
| LAURA PEREZ-GARCIA, | ) | |
|     Plaintiff, | ) | Case No. 13 C 1357 |
| | ) | |
| v. | ) | Hon. Harry D. Leinenweber |
| | ) | |
| CLYDE PARK DISTRICT, et al., | ) | Hon. Sidney I. Schenkier |
|     Defendants. | ) | |

## DEFENDANTS' FED. R. CIV. P. 50(a) MOTION FOR JUDGMENT AS A MATTER OF LAW AS TO COUNTS I OF PLAINTIFF'S SECOND AMENDED COMPLAINT

NOW COME the Defendants, CLYDE PARK DISTRICT (the "District"), BRIAN DOMINICK, JOSE RODRIGUEZ, ALEX RUEDA, FRANK SZCZECH[1], and MARK NOWAK, by and through their attorneys, Richard W. Schumacher of Stellato & Schwartz, Ltd., and K. Austin Zimmer of Del Galdo Law Group, LLC, and in support of their Motion for Judgment as a Matter of Law as to Count I of the Plaintiff's Second Amended Complaint, state as follows:

### I.    EVIDENCE PRESENTED IN PLAINTIFF'S CASE-IN-CHIEF

This case is about an employee suspected of misconduct trying to excuse her actions by lobbing accusations against her employer. The Plaintiff, LAURA PEREZ-GARCIA ("Perez"), claims that she was targeted for discipline and termination by the Defendants because she questioned expenses submitted by her supervisors at CLYDE PARK DISTRICT (the "District"). But the evidence the Plaintiff introduced at trial clearly demonstrates that Perez was terminated after the District learned that: 1) Perez used District funds for personal expenses; and 2) Perez failed to return a pension payment given to her in error. The Plaintiff admitted that it would make

---

[1] Szczech's last name is misspelled as "Szchech" where he is named as a defendant in the caption to this case – Defendants will refer to DEFENDANT "FRANK SZCHECH" by the correct spelling of his last name but either spelling cross-references the same individual for purposes of this motion and supporting materials.

sense for the District's Board of Commissioners (the "Board") to terminate her for the use of District funds for personal expenses and her failure to return a pension payment issued in error.

Perez testified about a series of documents from the District that "concerned" her because she believed the documents potentially exposed wrongdoing within the District. She testified that she presented certain documents to the Board president, Jose Rodriguez, and former Board member David Duran; however, she could not recall what documents she presented to Rodriguez or Duran other than to say that the documents showed potential corruption. Perez did not present any evidence that the Board members, with the exception of Jose Rodriguez and Alex Rueda, knew about her belief that there was corruption going on in the District. Perez also met with the FBI and brought documents to the FBI that purportedly evidenced corruption at the District. Perez testified that the only person at the District she told about her meeting with the FBI was another administrative assistance. She has presented no evidence that the District or the individual Defendants knew, prior to the instant lawsuit, that she went to the FBI. The FBI special agent that the Plaintiff met with testified that he never contacted anyone from the District concerning the Perez's claims.

Shortly after the Plaintiff's sister left the District, Perez sent a memo to department heads concerning submitting receipts for repayment. Perez testified that the District practices concerning invoices, expenses, and accounts payable did not change in 2011; rather, they just began doing more of what they had been doing for the past five or six years. Perez repeatedly stated that she began copying documents from the District in 2011 to protect herself.

The Plaintiff's testimony demonstrates that she had no basis to believe that the documents that "concerned" her evidenced any sort of illegal conduct. For example, she testified that Rosalyn Estrada's name on a referee list was concerning because Rosalyn was the first name

2

of a District employee's, Joe Belcaster's mother. Perez does not know Mr. Belcaster's mother's last name or where she lives, i.e. other than sharing the same first name, Perez has no information that Rosalyn Estrada is Mr. Belcaster's mother. The Plaintiff had concerns over a timesheet with 113 hours recorded because it contained more hours than it should; however she acknowledged that there were no issues with the timesheet because the employee could have worked 160 hours in the timeframe indicated on the timesheet. The Plaintiff's concerns with invoices from an electrical contractor were that she saw a lot of invoices from the company and the owner is a friend of the District's Executive Director. Perez was concerned about invoices for basketball and volleyball expenses because she did not think the District had basketball or volleyball leagues. She then admitted that her husband coached her son in a basketball league sponsored by the District, and she copied and produced a document that showed the District has volleyball leagues.

In October 2012, the Board questioned Perez concerning the tampering with of a surveillance camera located in the Plaintiff's office. The Plaintiff testified that she purchased personal items at Sam's Club for her own use with District funds, and she also admitted that she signed a certified document incorrectly telling the Illinois Municipal Retirement Fund ("IMRF") she resigned in 2006, receiving a refund of money paid into the system before reenrolling. The Plaintiff admitted that that it would make sense if the Board terminated her for the Sam's Club purchases and the false IMRF document.

## II.   LEGAL STANDARD

Directed verdicts are governed by Federal Rules of Civil Procedure 50 (a), "Judgment as a Matter of Law" which states:

> (1) *In General.* If a party has been fully heard on an issue during a jury trial and the court finds that a reasonable jury would not have a legally sufficient evidentiary basis to find for the party on that issue, the court may:
>
> (A) resolve the issue against the party; and
>
> (B) grant a motion for judgment as a matter of law against the party on a claim or defense that, under the controlling law, can be maintained or defeated only with a favorable finding on that issue.

Fed. R. Civ. P. 50(a)(a). The standard in deciding a motion for summary judgment under Fed. R. Civ. P. 56 mirrors the standard in a motion for judgment as a matter of law; therefore, for a motion made pursuant to Rule 50(a), "the trial judge must direct a verdict if, under the governing law, there can be but one reasonable conclusion as to the verdict. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986).

## III.   ARGUMENT

The evidence presented at trial can lead the jury to a single conclusion – the District terminated Perez because she could not be trusted. The Court must enter a directed finding with respect to Count I of the Plaintiff's Second Amended Complaint, because 1) the Plaintiff did not engage in protected speech – her allegations of corruption were baseless and made with a reckless disregard of the truth; 2) her speech did not involve a matter of public concern – she wanted to protect herself; 3) the evidence presented by the Plaintiff demonstrates that the Board terminated her for her personal purchases on the District's Sam's Club card and falsely indicating that she resigned in order to receive an IMRF payment. A directed verdict on Count I is also warranted for Defendants Dominick, Nowak, and Szczech, because the Plaintiff has

presented no evidence that they had knowledge that Perez went to the FBI or complained of corruption within the District to anyone outside of her chain of command. Finally, the Plaintiff has presented no evidence that the Defendants' conduct towards her would warrant punitive damages; therefore, her claim for punitive damages must be dismissed pursuant to Rule 50(a).

### A. The Plaintiff's testimony demonstrates that her speech was false and recklessly made.

A §1983 claim of First Amendment retaliation involving a public employee typically requires the following analysis: first, the court must determine whether the employee's speech was Constitutionally-protected. Second, the plaintiff must establish that the speech was a motivating factor in the retaliatory action. Third, the defendant has an opportunity to establish that the same action would have been taken in the absence of the employee's speech. *Hutchins v. Clarke*, 661 F.3d 947 (7th Cir. 2011). Where a defendant knows of a plaintiff's speech yet says adverse action was taken against a plaintiff for allowable reasons, "[i]n other words, the plaintiff bears the burden of proving 'but for' causation" *Zellner v. Herrick*, 639 F.3d 371, 378-79 (7th Cir. 2011).

In determining whether an employee's speech is protected, a court should consider whether it was made recklessly without regard to truth. *McGreal v. Ostrov*, 368 F.3d 657, 673 (7th Cir. 2004). A directed finding may be appropriate if the undisputed facts show that the employee acted without any legitimate basis. *Swetlik v. Crawford*, 738 F.3d 818, 827 (7th Cir. 2013). *See also Gazarkiewicz v. Town of Kingsford Heights, Indiana,* 359 F.3d 933, 942 (7th Cir. 2004) (holding that speech of public importance only loses First Amendment protection if the public employee knew it was false or made it in reckless regard to the truth).

Perez resorts to loaded phrases such as "corruption" and "ghost payroll." But the Plaintiff's testimony at trial clearly establishes that she had absolutely no basis to conclude that

5

the District was engaging in illegal conduct. As noted above, Perez could not explain how the documents she copied from the District raised concerns or demonstrated corruption. Practices that the Plaintiff had no problem with for over five (5) years, and she herself engaged in, suddenly became corrupt when she felt the need to protect her job. Compiling a stack of District documents and labelling them evidence of corruption did not involve protected speech, because the Plaintiff has not offered any evidence whatsoever that she had a reason to believe the District was engaged in illegal activity. Perez has offered nothing but baseless allegations that were recklessly made; therefore, Count I of her Second Amended Complaint must fail, and the Court should enter a directed finding in the Defendants' favor.

**B. The Plaintiff's speech did not involve a matter of public concern – she wanted to protect herself.**

The test for determining whether speech is protected requires, in part, that the speaker address a matter of public concern. *Kokkinis v. Ivkovich,* 185 F.3d 840, 843-44 (7th Cir. 1999), citing *Connick v. Myers*, 461 U.S. 138 (1983). However, "public concern" as discussed in *Connick* and its progeny is a term of art: "a topic that may be deemed one of public importance does not automatically mean the employee's statements address a matter of public concern as that term is employed in *Connick*." *Kokkinis*, at 844.

While the content of speech is the most important factor in evaluating its entitlement to protection under the law, the subject matter of an employee's grievance "does not end the inquiry." *Bivens v. Trent*, 591 F.3d 555, 560 (7th Cir. 2009). "If the speech concerns a subject of public interest, but the expression addresses only the personal effect upon the employee, then as a matter of law the speech is not of public concern." *Id.*, citing *Marshall v. Porter County Plan Comm'n*, 32 F.3d 1215, 1219 (7th Cir. 1994). Thus, even if this Court determines that Perez's mode of expression did put Defendants on notice of complaints about potential corruption, if

those complaints were ultimately aired to threaten superiors or coerce job security and not to stop waste, they will still not suffice to gain her protections properly reserved for advocates of reform. *Connick* itself is instructive. There, a district attorney who circulated a questionnaire to coworkers asking about their confidence and trust in supervisors acted outside the bounds of First Amendment protections because although workplace morale may relate to an agency's performance (and that performance may be of interest to the public), the focus of the *Connick* plaintiff's question was "to gather ammunition for another round of controversy with her superiors." *Id.* at 148. As the Seventh Circuit has observed: "[i]f every facet of internal operations within a governmental agency were of public concern, and therefore any employee complaint or comment upon such matters Constitutionally protected, no escape from judicial oversight of every government activity down to the smallest minutia would be possible." *Schad v. Jones*, 415 F.3d 671, 674.

A day after the Plaintiff's sister began working at a new job, Perez began to copy District documents and create a paper trial to protect herself. She could not offer any viable explanation as to how the documents that she saved evidence corruption. Practices that the Plaintiff previously had no issue with became concerning after her sister left. Perez repeatedly testified that she wanted to protect herself. The evidence that the Plaintiff presented can only lead to one conclusion – she acted out of an interest in self-preservation, which is not a matter of public concern; therefore, the Court must direct a verdict in favor of the Defendants' with respect to Count I of the Plaintiff's Second Amended Complaint.

**C. The Board would have terminated Perez, regardless of her alleged protected speech.**

Assuming *arguendo* that the Plaintiff engaged in protected speech, the evidence presented demonstrates that the Board would have terminated Perez regardless of her protected

7

speech. Where "the undisputed evidence shows that there was more than one reason to terminate" an employee, unsubstantiated allegations of public corruption will not immunize that employee's work history from review. *Kristofek v. Vill. of Orland Hills*, 2014 U.S. Dist. LEXIS 118895, at *27 (N.D. Ill. 2014). The Plaintiff admitted to making personal purchases with the District's Sam's Club account on at least five occasions, and she would try to pay the District back but did not have a routine or regular practice for repayment. Perez also testified that she signed an IMRF form falsely stating that she resigned from the District so she could collect nearly $4,000. Based on this conduct, the Plaintiff admitted that it would make sense for the Board to terminate her. The Plaintiff's admission demonstrates that the Board would have fired her regardless of her protected speech; therefore, a directed verdict is justified with regards to Count I of the Plaintiff's Second Amended Complaint.

**D. Defendants Dominick, Nowak, and Szczech had no knowledge that the Plaintiff engaged in protected speech.**

"Allegedly protected speech cannot be proven to motivate retaliation, if there is no evidence that the defendants knew of the protected speech." *Andrekus v. Bd. of Educ.*, 2004 U.S. Dist. LEXIS 19388 at *14 (N.D. Ill. 2004), citing *Stagman v. Ryan*, 176 F.3d 986 (7th Cir. 1999). Because the Plaintiff has presented no evidence that Dominick, Nowak, and Szczech were aware that she complained of corruption in the District to anyone, including the FBI, she cannot establish her claim under Count I with respect to these Defendants, and the Court should enter a directed verdict in the Defendants' favor.

**E. Perez has presented no evidence that would permit punitive damages.**

A jury may award punitive damages in a 42 U.S.C. § 1983 claim if it finds "conduct motivated by evil intent or involving reckless or callous indifference to the federally-protected rights of others." *Erwin v. Cty. of Manitowoc*, 872 F.2d 1292, 1299 (7th Cir. 1989). A plaintiff

may satisfy this standard by establishing that "defendant actually derive[d] satisfaction from hurting the plaintiff," or, "while not having any particular desire to hurt the plaintiff, trample[d] on the plaintiff's rights in a fashion that can fairly be called reckless, to accomplish his own aims." *Soderbeck v. Burnett Cty., Wis.*, 752 F.2d 285, 289 (7th Cir. 1985). In the context of punitive damages under § 1983, there is a distinction between deliberate misconduct and reckless misconduct. *Id.* at 290. The Plaintiff presented absolutely no evidence that any of the individual Defendants' decision to terminate her was "motivated by evil intent or involving reckless or callous indifference to the federally-protected rights of others." *Erwin*, 872 F.2d at 1299. Accordingly, the Court should enter a directed finding with respect to the Plaintiff's claim for punitive damages.

## IV.　CONCLUSION

This Honorable Court has fully heard the evidence presented by the Plaintiff, and the Plaintiff has offered no legally sufficient evidence that could be a basis for a jury to conclude in the Plaintiff's favor with respect to Count I of the Plaintiff's Second Amended Complaint. Moreover, the Plaintiff has offered no evidence that she is entitled to punitive damages.

WHEREFORE, for the foregoing reasons, the Defendants respectfully request that this Court enter judgment as a matter of law in favor of the Defendants pursuant to Fed. R. Civ. P. 50(a) with regards to Count I of the Plaintiff's Second Amended Complaint, and for such other relief as this Court deems equitable.

　　　　　　　　　　　　　　　　　　　Respectfully submitted,

| BRIAN DOMINICK, JOSE RODRIGUEZ, ALEX RUEDA, FRANK SZCZECH, and MARK NOWAK | CLYDE PARK DISTRICT |
|---|---|
| By: */s/ K. Austin Zimmer* | By: */s/ Richard W. Schumacher* |
| K. Austin Zimmer (#6276227)<br>Joseph A. Giambrone (#6309071)<br>DEL GALDO LAW GROUP, LLC<br>1441 S. Harlem Avenue<br>Berwyn, Illinois 60402<br>(708) 222-7000<br>(708) 222-7001 Fax | Richard W. Schumacher (#3122109)<br>James C. Elder<br>Stellato & Schwartz, Ltd.<br>120 North LaSalle Street, Suite 3400<br>Chicago, Illinois 60620<br>(312) 419-1011<br>(312) 419-1012 Fax |